We'll hear the next case on the calendar. Dearstyne v. Mazzuca Just wait a minute for everyone to leave. Thank you. You may proceed. May it please the court. My name is Marissa Lorenzo. I represent appellant Frank Dearstyne Jr. who, following a constitutionally deficient trial, was convicted in 1991 of acts alleged to have taken place when he was 16 years old. Habeas relief from these convictions should be granted for two reasons. First, because Mr. Dearstyne was denied due process and his right against self-incrimination by the failure to suppress his statement in violation of Jackson v. Deno and contrary to the facts. Second, because Mr. Dearstyne was denied his Sixth Amendment right to effective assistance of counsel in violation of Strickland v. Washington. These two issues were heavily litigated below. In 2011, magistrate judge Biacchini issued a 218-page report and recommendation in which he found numerous evidentiary findings and recommended that Habeas be granted on the two issues that are before the court today. In that decision, he wrote, Both parties served objections, and after a four-year delay, the district court rejected the report and recommendation in a five-page order, summarily denying the petition. The district court's decision should be overturned. First, Habeas relief should be granted because the state court's rulings on the voluntariness of Mr. Dearstyne's statement were contrary to or an unreasonable application of Supreme Court law and the facts. First, the trial court failed to make the factual findings necessary and required by Jackson v. Deno. Can I ask just a procedural question at the start that was confusing to me after reading the briefs? The state court, the 44010 court, on the voluntariness issue, it appears to me it denied collateral review on the voluntariness issue on the ground that it could have been raised on appeal, that the record was adequate, and that seems to me correct. The state, I'm not sure whether they are arguing a procedural bar here, but could you address why there is not a procedural bar, if it is being asserted by the state, why your client is not required to show cause and prejudice? Your Honor, the issue of the voluntariness of the confession was issued on the facts in the 44010 motion, and there's sort of numerous citations within the 44010 motion that show that the court did actually consider it on the merits, and for those reasons we contend that it's the Jackson v. Deno standard that should be met here, or that should be ruled here. Just so I understand it, it's your contention that Judge Dwyer's order violated Jackson by failing to adjudicate the voluntariness of Dierstein's alleged confession prior to submitting the voluntariness issue to the jury, is that it? That is correct, Your Honor. And the order is very clear in its language. I mean, it states that there are no clear-cut legal issues without resolving the questions of fact. Accordingly, the motion to suppress is denied, and a question of fact as to the voluntariness has been presented for determination by the jury. But didn't he ultimately make findings during the jury charge conference prior to the case going to the jury? Your Honor, there were some statements that were limited to the intentional isolation issue in the charge conference, but that was after the fact and after the statement, which had not been deemed to be voluntary, was submitted to the jury. And the submission of the jury without those factual findings being made before being heard by the jury violates Jackson v. Deno. Really? Does it matter whether it's made before the statement itself is presented to the jury or before the jury actually deliberates? The court did make specific findings that is clear to me that he thought they were voluntary statements before the jury actually deliberated. Is it your argument that because they weren't made before the trial started, that it violates Jackson? I would disagree with Your Honor respectfully that those statements made in the charge conference were a finding of voluntariness in the first instance. And even if they were, they were limited to one single issue, the intentional isolation. And taking a step back, I would argue that after the trial and after sort of the prejudicial impact of the statement, I mean, for the judge to make these statements and having the benefit of hearing the evidence, it was still in violation of Jackson not to have made a written determination that could have been challenged prior to the trial itself. I mean, your basis goes back to the July 8, 1991 order, right? Is that where the court says, during the taking of the testimony at the suppression hearing and in arguments set forth in the memoranda, a sharp question of fact has arisen. There are no clear-cut legal issues without resolving the questions of fact. Accordingly, the motion to suppress is denied. A question of fact as to voluntariness has been presented for determination by the trial jury. Correct, Your Honor. And a plain reading of that order demonstrates that the judge did not make the requisite findings under Jackson v. Deno. And, in fact, the state had previously conceded that point, including on its opposition to petitioner's motion for a certificate of appealability in this court, but now argues differently. And as a second point, those failures were not cured by the appellate division's decision. The state also now concedes for the first time that the appellate division only reached the issue of intentional isolation and not sort of the conduct within the interrogation room. But the appellate division's limited finding on intentional isolation doesn't cure the Jackson violation, because to hold otherwise would ignore Jackson's very purpose. And separately, on the issue of the voluntariness of Mr. Derenstein's statement, the appellate division's ruling on intentional isolation was also contrary to the evidence. So in addition to the Jackson claim, the appellate division's ruling was also contrary to the evidence that was presented in the record. Why is it? It's clear that the appellate division accepted the police officer's version of what happened. Why is that unreasonable? Your Honor, the appellate division ignored certain facts that were not controverted by either party. They ignored the fact that the police had identified Mr. Derenstein as a suspect before he went to his mother. The appellate division also ignored the fact that, despite this, Detective Petrucci falsely told Mrs. Derenstein that her son was not in trouble and she had nothing to worry about. The appellate division also ignored the fact that, having falsely obtained consent from Mrs. Derenstein, the detectives went to Mr. Derenstein and used his mother's consent to get him to come with them, drove 20 miles away to a different police station where they had prearranged to meet him, put him in the back door, which was reserved for officers only, bypassing the front door, did not sign the blotter, and only corrected that after his statement was recorded. Now, these facts were not controverted, and taken together they show a finding that Mr. Derenstein's statement was obtained through his intentional isolation. Essentially, he was cut off from his parents and his parents were cut off from him, and by doing so it was an unreasonable overbearing of his will to take his confession. Why isn't this case similar to FARR, I think it is, F-A-R-R-E, where it was, I believe, a 16-year-old who was read as Miranda Wright, who I believe requested to speak to his probation officer, and the Supreme Court found that the statement there was voluntary. The facts in that case seem particularly similar to the facts here. How do you differentiate it? I think the differentiating factor between Michael C. Farr and our case is that you have to look at the totality of the circumstances,  that were sort of preordained and based on the fact that he had been identified as a suspect even before they spoke to him, and taken together sort of the totality of the circumstances demonstrate that his will was overborne in this case. Is it your position that the remedy should be remand to a state trial court to conduct an evidentiary hearing on the entirety of the voluntary claim so that the hearing would include the consideration of whether the confession was involuntary because of the isolation of him from his parents and that the police used coercive interrogation techniques? Yes, Your Honor, because the trial court failed to make any factual findings on either of those two sets of facts. So both would have to be considered. Now on the ineffective assistance of counsel claim, the Judge McGrath reasoned that the trial counsel had pursued a clear strategic pattern of pointing out the ambiguities, I'm quoting, of a people's case in every area, emphasizing to the jury that there were no experts to interpret the evidence and challenging them to find sexual abuse beyond reasonable doubt. Why, given the deferential standard that is before us, why should we overturn that? Your Honor, it is not a strategy not to consult with any medical or behavioral experts, especially in a credibility contest such as this court and other courts have found that is a sexual abuse case. Here, trial counsel did not take any affirmative steps to inform him about the medical evidence or the behavioral evidence that was admitted into trial. Had he done so, the outcome of the trial would have been different. Dr. Fay's affidavit, which was submitted by appellant on the state court level, raises lots of issues with respect to Dr. Close's findings and conclusions that could have been raised had trial counsel even at a minimum consulted with an expert. In addition, you can take a look at Dr. Close's trial testimony and see that although in his view he was attacking the evidence put on by the state, in essence, his failure to prepare himself actually made the case worse. In many instances, trial counsel actually asked Dr. Close questions posed as if Dr. Close were an expert and asked him to state with reasonable medical certainty certain facts that, had he consulted with an expert or presented his own expert, could have avoided those pitfalls. I think the record is replete with examples of how even minimum consultation with medical experts could have changed the outcome of trial, for example. Well, the cross- and correct me if I'm misremembering the record, but Dr. Close conceded that the drainage at issue had continued for several weeks, that it could be caused by a number of different things, including an infection. The abrasion could have been caused by T.O. herself, and the measurements of the hymen were within a normal or near-normal range. Various facts, and there's always a risk if you put on an expert, that ground that you've gained is going to be lost. So what precisely is it that you think would have happened if an expert had been called that didn't happen because of the failure? I mean, Your Honor, I think even those questions that were asked and the testimony that were elicited could have been bolstered by a consultation and or an expert. For example, there were numerous studies on hymenal measurements and how that's an unreliable source of indications of sexual abuse. In addition, I mean, a fundamental baseline question was what Dr. Close did with the sample that he examined, which he testified he had 99% medical certainty it was sperm. I mean, it wasn't until 2008 when the state was requested to submit an affidavit for Dr. Close that it became evident that the sample was immediately discarded. I think had trial counsel consulted with an expert, they might have asked to see that sample, and it would have been discovered that it no longer existed, and the outcome of the trial could have been determined. But it wasn't even that rebutted by the report that the defense did move to admit by the subsequent doctor who said there was no sperm. Your Honor, there was a medical report, and that's the Johnson Rape Kit, that was indicative that there was no sperm present. However, it was given to the jury without any explanation or evidence on why it could be rectified with Dr. Close's testimony. I mean, the jury was left to speculate. They have a doctor who testifies that he is 99% certain that it was sperm, and then they have a medical record that they don't have any sponsoring testimony or any expert explaining that says that there were no sperm. I mean, trial counsel would have needed to link those two together to show that it would have been impossible given the medical rape kit that Dr. Close could have seen sperm in the first place. Help me with this. Where is the evidence before the state courts that the gimmick had not consulted with psychological or medical experts? Your Honor, this is the point that is raised by the state, their pinholster claim. Initially, the 44010 motion appellant did raise the issue of failure to consult with his experts, and that's Respondent's Appendix, page 25. So the issue of failure to consult with experts was present in the 44010 motion. I think that, taken together with the fact that reading the trial transcript alone, it becomes clear that trial counsel failed to take any steps to inform himself of what a medical expert could have helped provide. I think reading those two things together would be the state court evidence. But I would go further to say that we would reject the state's position that pinholster requires this court not to consider the gimmick affidavit. Pinholster was a case in which the habeas petitioner was trying to bolster his case by putting in new evidence. This is completely different. This is a case where the state itself has put in evidence and is now trying to back away from their own admission. Thank you. Thank you. I think that's as high as it goes. May it please the Court, my name is Paul Lyons, and I'm an Assistant Attorney General representing Respondent. Let me start with the Jackson v. Deno issue, which looks to whether the hearing court determined that petitioner's confession was voluntary. The Jackson rule simply requires the hearing court to make a clear-cut determination on voluntariness. That's exactly what the hearing judge did in this case. First, he said that the parties raised a sharp question of fact. Next, he stated that the legal issues couldn't be decided without first deciding the fact questions. He then stated that he was denying the motion, and by denying the motion he implicitly resolved the factual and legal questions, finding that petitioner's confession was voluntary. How do we know that? Your Honor, we contend that this is the only one reasonable way to read the order. The whole point of a Huntley motion is to get a pretrial determination of voluntariness. It doesn't make sense that this highly experienced judge who was 14 years on the bench, probably had done scores, if not hundreds, of Huntley motions. The whole point of a Huntley motion is to get a pretrial declaration on whether it's voluntary or not. It doesn't make sense that the fact of his experience in these matters cuts against your argument, doesn't it? Because given that experience, he would have been explicit. You're asking us to say that implicitly this is what he did. You're asking us to try to read his mind. Well, I think we're looking at it in the context, Your Honor, and I think judges who have been on the bench tend to use shorthand. Everyone in this trial understood that he had done voluntariness, and he made that clear in the charge conference where he said, that's an issue which was brought up by you in the suppression hearing, and I felt at the time, as I do now, as a matter of law, that there had been no trickery or coercion. It's reasonable to look at this in context. Jackson was done in 1964. Huntley was 65. This is 27 years later, a trial in 91. Published decisions by that time rarely make Jackson errors. And the judge, as I said, was a former DA. He was on the bench 14 years. So petitioner here is essentially saying that this highly experienced judge clearly and egregiously violated well-established law, but nobody noticed this obvious mistake, which is in a written order, by the way. Not trial counsel, not appellate counsel who otherwise put in a rather lengthy voluntariness statement on direct appeal, and not the DA, no one noticed. On habeas review, simple comedy requires that we give some benefit of the doubt to the state judge that, for example, he understands what the presumption of innocence is. He doesn't come out and say something that contradicts it, if it's in the transcript, let's say. At the very least, we shouldn't assume that this experienced judge made an egregious error and nobody noticed. To the contrary, everyone in this case acted as if the hearing court had made the voluntariness determination. Okay. I'm right in recalling that, so it wasn't raised on direct appeal in the 440 court. It was raised the failure to comply with the state law provision saying articulate your facts. It was raised there, and the court declined to hear it, saying it could have been raised on appeal. Correct, Your Honor. And then what happened in the appellate division? We waived the adequate independent ground, Your Honor. I have a question about the appellate fact-finding issue. Is it your view that New York courts would favor appellate court fact-finding over trial court fact-finding? Over a trial court? Instead of. Instead of. You say, and I may be misunderstanding, you note that Jackson stated that the defendant is entitled to a determination of the voluntariness of his confession in the state courts in accordance with valid state procedures, and that New York law does not prohibit appellate fact-finding, including in the voluntariness context. Is that a fair understanding? Yes, Your Honor. So is it your view that if we had a choice between a trial court making fact-finding and an appellate court making fact-finding, which do you think is generally better suited for fact-finding? Oh, Your Honor, Jackson and his progeny, when they remand, they say, we're going to have a hearing, because that's the best procedure, and the progeny explains why. You don't want to have a trial, and then after the trial, you find out the confession was bad. It's a total, colossal waste of time. So doing it during the trial is a bad idea also, and after the trial is bad. But in Jackson and progeny, by the way, they repeatedly say the only remedy is a post-trial hearing or a judicial determination at the least. So they're saying, yeah, we didn't have a pretrial, but post-trial is still fine. We're going to send it, because it's habeas or because of the comedy, we're going to send it back to the state court, and they're going to have a post-trial determination. So it's not, yeah, they would never prefer to do it that way, Your Honor, of course. I would also, I think we're getting a little too caught up in the fact questions before the appellate division. Because even if all of petitioner's allegations regarding isolation were true, petitioner's claim would still be meritless as a matter of law. Here, both the hearing court and the appellate division rejected it as a matter of law. The hearing court, as I just quoted, expressly denied the isolation claim as a matter of law. The appellate division said because defendant was legally an adult, there was no requirement that his family be present during the police questioning. The appellate division was correct. Under both state and federal law, we cite all the cases. Petitioner was legally an adult, so his parents were not required to be present during the interrogation. In fact, under federal law, a confession isn't deemed involuntary simply because the juvenile was prevented from speaking to his parents or vice versa. The parents were prevented from speaking to the juvenile. There are cases like that. And I haven't seen any to the contrary. Accordingly, given that the police in this case had the right to exclude petitioner's parents from the interview, it's hard to see how police trickery in excluding the parents could somehow render petitioner's confession involuntary. In other words, even if the father had arrived at the station in time, you know, there was no delay. The father had no right to stop the interview under federal law. The father had no right to speak to petitioner. Petitioner had no right to speak to the father. And it bears noting that neither petitioner nor the parents ever asked, not even mentioned, counsel, much less asked for counsel, and no one asked for the interview to stop. Isn't it possible, though, that credibility assessments as to the isolation claim may have some impact as to the coercion claim? So if you have piecemeal determination of the voluntariness claim with the appellate division, the isolation argument by the appellate division, and then the coercion argument by a new court, wouldn't that create possibly its own difficulties? Just to make sure, Your Honor, are you troubled by the idea of remanding just one issue? Yes. I don't find – neither of us find cases on this unusual situation, of course. The petitioner only brought isolation in the appellate division, and that's what was addressed. But under – I think we have to consider epideference here. The appellate division made a decision very clearly on the isolation issue. It went up. Leave to appeal was denied. To send it back down and basically ignore that decision or direct the state court to ignore that decision really seems to violate AEDPA, which is – the difference is really strong here. In fact – Voluntariness is a federal claim. It's based on the totality of the circumstances. And I don't see how you can assess the totality of the circumstances if you segregate out – we're not going to consider this part of what happened. We'll just consider this part. So it seems to me – and correct me if I'm misunderstanding something – that it would be more consistent with the federal standard to have it done all of the piece. Well, when they raised it in the appellate division, I'd note everyone seemed to think that they could just address the isolation issue and not consider all these other questions of whether at the interview itself it was coercive. So even though – yeah, the standard totality of the circumstances, they felt they were able to decide the isolation issue. Under Jackson – They have been able to as a state claim, as a state law claim. But I'm not sure you can do that as a federal constitutional claim, decide it that way. Well, they're applying federal law, Your Honor, as well. They can't decide – I don't see how they can decide the voluntariness question without applying a totality of the circumstances test. And that would be a determination that we would give deference to. I think they really are discrete issues, Your Honor. I mean, one is whether the parents were kept from the room. And the other is whether the interview itself was coercive. And it's not unreasonable, I think, to separate them. And especially Jackson and his progeny really give a lot of deference to these state courts. You know, and that was before AEDPA. Way back in 1964, they were saying, we can't decide this, and the Habeas Court can't decide it. You have to send it back to the state for valid state procedures. And if the state feels they could address it, and I'm pretty sure they would say, you know, the appellate division already decided this. If the state court feels under valid state procedures that they could decide the coercion issue by itself, I think it would be really burdensome under a violation of AEDPA to direct the state court to consider a reissue, consider it altogether, and ignore these clear findings that have gone up to the court of appeals on isolation. Can I ask you about the expert witness issue? So there's the affidavit of Dr. Gardner submitted by Dierstein, which states that had Mr. Eugene Gimmick attempted to consult with an expert, there is no question that he could have found one. Did the state ever dispute those contentions before the state court? Did they? Did they disagree? Well, there's no ‑‑ under PIN also we're limited to, as you say, what is in the state court record. I can't say whether they disputed it precisely. What was ‑‑ I'm sorry, Your Honor, I didn't ‑‑ You know, they said had Mr. Gimmick attempted to consult with an expert, there was no question that he could have found one. Okay. There was no evidence, and it wasn't our burden in state court to show that counsel hired or retained or consulted an expert. It's petitioner's burden. Under Burt, the tight lobe Supreme Court case, the absence of evidence in an effective counsel case doesn't rebut the presumption of competence. So it was petitioner's burden to come up with evidence. And he had no evidence that counsel did not consult with a psychological expert. You know, I mean, the petitioner makes this estoppel argument that we put in Mr. Gimmick's affidavit, but that was six years before PIN Ulster. I mean, there are no cases supporting that. The whole idea of PIN Ulster is you just look at the state court record. That's what we're limited to. It shouldn't make a difference whether you put in a Sparman affidavit. Yeah, when the law was back then, we had to put a Sparman affidavit. There's no estoppel. But even if you look at Gimmick's declaration, he just said, I didn't call anyone because I wiped the floor with them on cross. He didn't say I didn't consult with anyone. He didn't say I didn't retain anyone. And I'd also mention the judge had previously prohibited the people from offering a psychological expert. He said it's ridiculous. This is, you know, common sense. We don't need an expert. The jury can figure this out. So the idea that there's any prejudice or that whole psychological expert thing makes – I'm sorry to speak in superlatives, but it really makes – it's not close, the ineffective counsel claim. Petitioners – I'll say this. The brief is written like it was written 10 years ago because they ignore Pinholster. They ignore Renico and its progeny, which say that you're limited to the state court record. So that's how they get Grimmick in. I'm sorry, Pinholster, which says you're limited to the record. Renico and its progeny, which says you can't use state court decisions to fill in all the gaps. And, you know, now we have Renico, Parker, Lopez, Marshall. You know, the Supreme Court has done this over and over again. You can't use state – I'm sorry. You can't use circuit court decisions to fill in the gaps. And that's – if you look at the report and recommendation, it's all Second Circuit. And I love the Second Circuit, Your Honor. I have nothing against the Second Circuit, but we're limited to clearly established Supreme Court law. And Pavel is even pre-AEDPA. They didn't even pretend to be following clearly established Supreme Court law. And all the other decisions, all the Second Circuit decisions, Ease, Pavel, Linsteadt, Gersten, they're all prior to Renico at a time when the Second Circuit thought it was okay to fill in the gaps. And other circuit courts did, too. Then in Renico and, to some extent, in Carey v. Misladen, the Supreme Court said no and repeatedly said no, you can't use your own precedence to fill in the gaps. It's clearly established Supreme Court law. Thank you. So there are the questions. Thank you, Your Honor. Thank you. Three quick points, Your Honors. First, on the voluntariness issue, this Court should not remand a single issue. It's necessary to look at the totality of the issues on voluntariness. And, in fact, that's what Magistrate Judge Biacchini did in his report and recommendation. Second, on the expert issue, there's no evidence that the state made any effort to contest the statements that Grimmick had failed to consult any experts at the state level. And so I think that that issue, both in the 44010 motion and as shown both in the declaration and in the trial record itself, is clear. And third, as far as the state's position on Renico, Pavel, Linstead, Easy, and the Second Circuit's line of cases in this area are not filling in gaps, but they're merely applying Strickland Supreme Court law to a particular set of facts and circumstances. And for that reason, those cases can be considered in this case because they are applying Supreme Court law set forth in Strickland. Thank you.  Thank you both for your arguments. Ms. Lorenzo, are you arguing pro bono? The court thanks you for your service. We thank the state also for its good arguments. The court will reserve decision. The final three cases, United States v. Cooper, Washington v. Donohue, and Palmer-Williams v. United States, are on submission. The clerk will adjourn court. Court is adjourned.